UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**LILIAN ONOH,**

Plaintiff,

v.

**No. 4:25-cv-00298-P**

**SAHARA REPORTERS MEDIA
GROUP INC., ET AL.,**

Defendants.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Sahara Reporters Media Group Inc. ("Sahara Reporters") and La Kiesha Landrum-Pierre's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion"). ECF No. 28. Having considered the Motion, the docket, and the relevant law, the Court **GRANTS** the Motion and **DISMISSES** the case **without prejudice.**

## BACKGROUND

Plaintiff, Lilian Onoh, filed this case alleging defamation and intentional infliction of emotional distress with the Court on March 17, 2026. ECF No. 1 at 1. This case follows a dismissal of an identical lawsuit from the Dallas Division of the United States District Court for the Northern District of Texas. ECF No. 38 at 5. That court dismissed Plaintiff's case for lack of subject matter jurisdiction because the Parties lacked complete diversity. *Id.*

Plaintiff is a citizen of Nigeria who intends to remain in Texas indefinitely as a Lawfully Permitted Resident (LPR). ECF No. 1 at 2; ECF No. 38 at 6. To that end, she has completed all processes for Status Adjustment from diplomat to LPR. ECF No. 38 at 6. Defendant Sahara Reporters is an online media company incorporated in New York. ECF No. 28 at 6. It reports on public matters concerning Nigeria, Nigerian Americans, and Africa. *Id.* Defendant Landrum-Pierre has been the

Chief Executive Officer of Sahara Reports since 2019. ECF No. 38 at 6. Crucially, Defendants do not have any offices in Texas, any business relationships with Texas advertisers, or any interactive commercial features directed at Texas residents for business purposes. ECF No. 28 at 7. However, Defendants publish articles at "saharareporters.com", which is globally accessible. ECF No. 1 at 2. Some of the published articles on their website concern Plaintiff's alleged misconduct as a former Nigerian ambassador and diplomat. ECF No. 1 at 2-6).

Defendants moved to dismiss Plaintiff's defamation claims, asserting the Court lacks personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *See* FED. R. Civ. P 12(b)(2); ECF No. 28 at 12. Specifically, they contend saharareporters.com is a passive website which, if true, effectively excludes them from the Court's jurisdiction. ECF No. 28 at 12. Regardless, they maintain they have not targeted their website, or any article concerning Plaintiff, at Texas and that the articles were not aimed at Texans any more than residents of other states. ECF No. 28 at 13. Finally, they assert they did not know Plaintiff's whereabouts prior to their initial reporting of Plaintiff's alleged misconduct. ECF No. 28 at 14. They argue the only reason they mention Texas in their articles is because Plaintiff fled there from Nigeria seeking asylum, and filed a lawsuit there. *Id.* at 14–15.

Plaintiff counters by claiming Defendants intentionally targeted their November 7, 2024 and January 14, 2025 articles at Texas as a forum. ECF No. 38 at 9. While she concedes Defendants published their articles in New York (ECF No. 38 at 10), she alleges she felt the "effects" of the articles in Texas, where she has lived since 2021. *Id.* To convert this effect into purposeful targeting, she argues Defendants targeted their website at Texas to exploit the Texas market specifically because Texas contains the largest number of Nigerians outside of Nigeria and a large diplomatic community. ECF No. 38 at 9-10. Because of these high-density populations, Plaintiff argues Defendants targeted Texas to increase viewership and revenue. ECF No. 38 at 9. To bolster her claim of targeting, she argues Defendants were fully aware she was residing in Texas prior to publishing the November 7, 2024 and January 14, 2025 articles. ECF No. 38 at 12.

2

For the Court to exercise personal jurisdiction over a website, the website cannot be purely passive. Rather, the website must interact with its visitors. Accordingly, Plaintiff argues Defendants' website is an interactive one. ECF No. 38 at 11. She contends the website is interactive because if visitors want to comment, they must first register by entering personal details. *Id.* She further asserts the website is interactive because it solicits donations. ECF No. 38 at 10. Thus, because Defendants were aware of her location and allegedly targeted Texas's large population of Nigerians and diplomats to increase viewership and revenue, the exercise of personal jurisdiction satisfies all constitutional requirements. *Id.* Having evaluated the parties' arguments alongside the jurisdictional record, the Motion is ripe for review.

## LEGAL STANDARD

A defendant may successfully move for a 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction if the defendant does not have purposeful contacts with the forum and exercising jurisdiction would not comport with traditional notions of fair play and substantial justice. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021); *see International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The plaintiff has the burden of demonstrating to the court, it has personal jurisdiction over the defendant, *and* courts must accept a plaintiff's uncontroverted, non-conclusory allegations of fact as true. *Id.*

## ANALYSIS

The Court's personal jurisdiction inquiry proceeds in two steps. First, the Court must evaluate the interactivity of Defendants' website to determine if it is purely passive. *See Johnson*, 21 F.4th at 318. If the website is not purely passive, then the Court must apply *Calder's* "effects test" because the basis for jurisdiction stems from alleged internet libel, committed outside the forum state of Texas. *See Id.*

A federal district court sitting in diversity may exercise specific personal jurisdiction over non-resident defendants if the forum's long-arm statute permits it, and the exercise of jurisdiction comports with due process. *Revell v. Lidov*, 317 F.3d 467, 469–70 (5th Cir. 2002); *see*

U.S. Const. Amend. XIV § 1. Since Texas's long arm statute reaches the constitutional minimum, the inquiry becomes whether exercising specific personal jurisdiction would offend due process. *Revell*, 317 F.3d at 469–70*; see* U.S. Const. Amend. XIV § 1*; see* Tx. Civ. Prac. & Rem. Code & 17.042.

For the Court to have specific personal jurisdiction over non-resident defendants, three conditions must be met. *Johnson*, 21 F.4th at 317. First, the defendants must have purposefully availed themselves of the privilege of conducting activities in the Court's forum. *Johnson*, 21 F.4th at 317; (quoting *Ford Motor Co. v. Montana Eighth Jud. Distr. Ct.*, 592 U.S. 351, 359 (2021). Second, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. *Johnson*, 21 F.4th at 317 (quoting *Ford Motor Co.*, 592 U.S. at 359). And third, the Court's exercise of jurisdiction must be fair and reasonable. *Johnson*, 21 F.4th at 317; (quoting *Seiferth v. Helicopters Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Limiting a forum's jurisdiction reflects the principles of treating defendants fairly and protecting interstate federalism. *Johnson*, 21F.4th at 317; (quoting *Ford Motor Co.*, 592 U.S. at 359). A defendant must have fair warning that his or her actions may subject him to a forum's jurisdiction. *Id.* Fair warning allows a defendant to structure its primary conduct to lessen or avoid exposure to a specific forum. *Id.* Limited jurisdiction protects interstate federalism through ensuring a forum with little legitimate interest in a suit cannot commandeer it from a more affected forum. *Id.* Defendants alleged connection to Texas is through their website saharareporters.com. ECF No. 38 at 10. The Court's first inquiry is whether saharareporters.com is a passive or interactive website. *Revell*, 317 F.3d at 470.

## I.   Defendants Do Not Operate a Purely Passive Website Because Visitors May Engage in Direct Information-Sharing on the Website.

For the Court to proceed with the standard personal jurisdiction analysis, the Court must assess a website's interactivity. Interactivity is a prerequisite to the Court's standard personal jurisdiction inquiry.

*Johnson*, 21 F.4th at 319; *see Revell*, 317 F.3d at 472. When a plaintiff claims a defendant's website is the basis for a forum's exercise of specific personal jurisdiction, the Court first looks to the website's interactivity. *Johnson*, 21 F.4th at 318; *see Revell*, 317 F.3d at 470 (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). Taking from *Zippo, Revell* employed a sliding scale to measure a website's connections to a forum. *Revell*, 317 F.3d at 470. On one end of this scale is a passive website. *Id.* A passive website is one that merely allows the website's owner to post information. *Id.* If the website is passive, then jurisdiction is unavailable. *Johnson*, 21 F.4th at 318 (citing *Revell*, 317 F.3d at 470). On the opposite end of the scale are websites that engage in repeated online contacts with forum residents. *Revell*, 317 F.3d at 470. Those websites may warrant a forum's exercise of specific personal jurisdiction. *Id.* In the middle of the scale are websites that interact with their visitors by sending and receiving information from them. *Johnson*, 21 F.4th at 318. If a website is not purely passive, the Court moves to the standard personal jurisdiction analysis. *Johnson,* 21 F.4th at 318; *see Calder v. Jones*, 465 U.S. 783 (1984).

Again, Plaintiff contends Defendants operate an interactive website. ECF No. 38 at 11. Specifically, Plaintiff notes visitors who wish to comment on articles must first register through the website's interface, which requires users to create an account and provide personal information. *Id.* Plaintiff also points to the website's solicitation of donations from visitors. *Id.* Defendants, by contrast, characterize the website as purely passive, arguing that it merely publishes content for worldwide viewing. ECF No. 28 at 12–13.

The Court concludes that saharaareporters.com is neither wholly passive nor highly interactive but instead falls somewhere in between. Although visitors may view content without providing any information, the website includes features that require user participation and the transmission of information to Defendants. Visitors may submit stories for potential publication, a process that requires the submission of personal information along with the proposed content. The website also solicits donations from supporters and permits prospective advertisers to contact Defendants through a form requiring identifying information,

including a name and email address. These features involve a degree of interaction beyond the mere posting of information on the internet. *See Johnson*, 21 F.4th at 319; *see also Revell*, 317 F.3d at 472.

Accordingly, the Court finds that Defendants' website is minimally interactive rather than purely passive. Because the website falls outside the category of wholly passive, the Court proceeds to the ordinary personal-jurisdiction analysis to assess whether Defendants have established sufficient contacts with the forum. *See Johnson*, 21 F.4th at 318.

## II.    Defendants' References to Texas Do Not Establish Purposeful Contacts Because Texas Is Not the Focal Point of the Alleged Libel and Harm.

In internet-based defamation cases, the fact that a plaintiff suffers harm within a forum is insufficient to establish personal jurisdiction; rather, a plaintiff must demonstrate the defendant purposefully directed the website at that forum. Plaintiff attempts to meet this burden by alleging Defendants sought to exploit the Texas market to increase revenue and viewership by covering her alleged conduct as a Nigerian ambassador and diplomat. ECF No. 38 at 9. She points to the high concentration of Nigerians and the large diplomatic community in Texas as evidence of a tailored audience. *Id.* As a result of this targeting, she asserts she felt the "effects" of Defendants' publication in Texas where she has lived permanently since 2021. ECF No. 38 at 10.

To evaluate whether these allegations support specific personal jurisdiction, the Court applies *Calder v. Jones's* "effects test". *Johnson*, 21 F.4th at 318; see *Revell*, 317 F.3d at 472–76; *see also Calder v. Jones*, 465 U.S. 783 (1984). Internet-based libel claims require the Court to determine whether a defendant has purposefully availed themselves of a forum. *Johnson*, 21 F.4th at 318. The dispositive inquiry is whether the forum state served as "the focal point both of the [alleged libel] and the harm suffered." *Johnson*, 21 F.4th at 318; (quoting *Calder*, 465 U.S. at 789).

As a threshold matter, a publication must target or reference the forum to begin a jurisdictional inquiry. *See Revell*, 317 F.3d at 473. To support her jurisdictional claim, Plaintiff identifies several articles published by Defendants as the purported bases for the Court's exercise of jurisdiction. *See* ECF No. 1, 38. While each article concerns Plaintiff's alleged misconduct as a former Nigerian Ambassador and Diplomat (ECF No. 38 at 6, 7), only two publications, specifically the November 7, 2024[1] and January 14, 2025 articles, reference Plaintiff, and Texas.[2] ECF No. 1 at 6; ECF No. 38 at 10, 11. Accordingly, the Court limits its jurisdictional analysis to those two articles because the others contain "no reference to Texas, nor [do they] refer to the Texas activities of [Plaintiff]." *Revell*, 317 F.3d at 473. Absent any Texas-specific content or targeting, Texas cannot be "the focal point both of the [alleged] libel and of the harm suffered." *Johnson*, 21 F.4th at 318 (quoting *Calder*, 465 U.S. at 789). Consequently, the Court declines to exercise jurisdiction over Defendants because their November 7 and January 14 articles' reference to Texas does not amount to targeting Texas and thus does not implicate Texas as the "focal point both of the [alleged] libel and of the harm suffered". *Id.*

> A. *Because Defendants' November 7 and January 14 Articles Focus on Plaintiff's Alleged Misconduct Abroad, the Incidental References to Texas Result from Plaintiff's Unilateral Actions and Cannot Support Jurisdiction.*

In *Johnson v. TheHuffingtonPost.com*, the dispositive inquiry was "whether the defendant aimed the alleged libel at Texas." *Johnson*, 21 F.4th at 321. In *Johnson*, the defendant allegedly libeled the plaintiff in Texas on his website. *Id.* at 317. However, the defendant's allegedly libelous story did not mention Texas. *Id.* at 319. It only recounted a story that took place outside Texas and did not use Texas sources. *Id.* The court in *Johnson* held that forum residents' unilateral visits to a website are legally insufficient to establish personal jurisdiction over an out-of-

---

[1] https://saharareporters.com/2024/11/07/ex-nigerian-ambassador-onoh-begs-us-green-card-over-saharareporters-corruption-report#goog_rewarded
[2] https://saharareporters.com/2025/01/14/breaking-saharareporters-and-sowore-defeat-ex-nigerian-ambassador-onoh-us-court-amid

state defendant. *Id.* at 320. Such visits merely reflect the defendant's websites' universal accessibility, and accessibility alone cannot sustain jurisdiction. *Id.* Ultimately, a plaintiff cannot establish specific jurisdiction over out-of-state residents who have not purposefully reached into the forum state to solicit views or visits from its residents. *Id.* at 322.

Here, *Johnson* controls the Court's analysis. *See Johnson*, 21 F.4th at 323. While the November 7 and January 14 articles do mention Texas, those references are incidental to and do not alter "the focal point both of the [alleged libel] and of the harm suffered." *Johnson*, 21 F.4th at 318 (quoting *Calder*, 465 U.S. at 789). Specifically, the November 7 article claims Plaintiff seeks asylum in Texas, yet the article's focus remains on her Nigerian affairs from 2021.[3] Ultimately these articles mention Texas only because Plaintiff fled Nigeria after Defendants' initial reporting occurred.[4]

The unilateral activity of a plaintiff cannot alter the focal point of both the alleged libel and harm. *See Hanson v. Denckla*, 357 U.S. 235, 253 (1954); *see also Johnson*, 21 F.4th at 318. Here, Plaintiff's arrival in Texas is the only reason Defendants reference Texas in the November 7 article. After Defendants initially reported on Plaintiff's alleged misconduct in Nigeria, Plaintiff fled Nigeria because that initial reporting caused unrest among Nigerian citizens. Further, the focus of the reputational harm occurred in Nigeria because she was terminated and subsequently fled from there. *See Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426–27 (5th Cir. 2005). While Plaintiff now seeks asylum in Texas, she does so because of her alleged misconduct in Nigeria which remains the basis of the articles. In other words, the focus remains on Nigeria and the alleged actions of a former Nigerian ambassador and diplomat. *Revell*, 317 F.3d at 473.

While the January 14 article's reference to Texas does not alter the focal point of the alleged libel or injury it is nevertheless instructive. The article's reference to Texas results from Plaintiff filing a Texas

---

[3] https://saharareporters.com/2024/11/07/ex-nigerian-ambassador-onoh-begs-us-green-card-over-saharareporters-corruption-report

[4] *Id.*

lawsuit. That lawsuit was dismissed for lack of subject-matter jurisdiction.[5] Texas appears only because of Plaintiff's own actions. And referencing a forum's litigation constitutes a matter of factual reporting, not an act of libelous targeting.  The Court cannot exercise jurisdiction when limited contact results solely from Plaintiff's actions. *See Hanson*, 357 U.S. at 253.

### B.  *Plaintiff's Allegations Support the Notion of Unilateral Action as a Basis for Declining the Exercise of Jurisdiction.*

Universal accessibility alone cannot form the basis for exercising specific personal jurisdiction absent purposeful targeting. *See Johnson*, 21 F.4th at 320. Ironically, Plaintiff alleges harm in Texas because of a large population of Nigerians and diplomats in Texas, claiming Defendants targeted these populations to increase viewership and revenue. ECF No. 38 at 9. However, mentioning Texas is not the kind of forum-directed targeting that would cause Nigerians or diplomats in Texas to follow diplomatic news concerning a former Nigerian ambassador and diplomat. Their heightened awareness, if any exists, stems from Plaintiff's unilateral actions. *Hanson*, 357 U.S. at 253. Even if saharareporters.com is minimally interactive, nothing shows Defendants solicited Texan views, or targeted Texas as a forum. *Johnson*, 21 F.4th at 322.  Their website is globally accessible without requiring visitors to create an account.[6]  Interaction occurs only if a visitor chooses to interact.[7] The only reason to subject Defendants to the Court's jurisdiction would be because Texans unilaterally visited the site. *Johnson*, 21 F.4th at 321 (quoting *Hanson*, 357 U.S. at 253 (1954). Absent ties showing Defendants reached into Texas to solicit Texan viewership, Defendants cannot be dragged into Texas to answer for it. *Johnson*, 21 F.4th at 322; *see Walden v. Fiore*, 571 U.S. 277, 291 (2014).

---

[5] https://saharareporters.com/2025/01/14/breaking-saharareporters-and-sowore-defeat-ex-nigerian-ambassador-onoh-us-court-amid

[6] Defendants' articles appear only on saharareporters.com, and nothing in the record shows Defendants directed that website at Texas. The website covers mainly Nigerian and African News. ECF No. 1 at 2. A mere reference to Texas does not transform these articles into content "directed at Texas readers as distinguished from readers in other states." *Revell*, 317 F.3d at 473.

[7] https://saharareporters.com/rss#goog_rewarded

### C. A Similar Case Involving Paper Publications Offers Guidance Because Fifth Circuit Precedent Confirms That Collateral References to Texas Do Not Establish Jurisdiction.

Collateral or contextual references to a forum state do not alter the true focal point of a publication centered on events occurring abroad. *Johnson*, 21 F.4th at 318; *see Revell*, 317 F.3d at 472–76; *see also Calder,* 465 U.S. 783; *see also Fielding*, 415 F.3d at 426–27." Unlike *Calder*, where California was the focal point of the defamatory story, references to Texas were merely collateral to the focus of the alleged libel and harm. *Fielding*, 415 F.3d at 426–27. Defendants' contacts consisted of limited background research in Texas. *Id.* at 426. The research gathered information from Texas citizens and a Texas yearbook to supplement their article about the alleged affair between a German diplomat and his wife. *Id.* at 426. The clear focus of the articles remained on German activities of individuals in Germany. *Id.* at 427. The articles criticized the professional careers of a German diplomat and his wife, and the diplomat suffered the brunt of the harm in Germany because his was terminated there. *Id.* Thus, the focal point of both the alleged libel and harm suffered occurred in Germany, not Texas. *Id.*

Like *Fielding*, Defendants' contacts with the form are purely collateral. Although the November 7 and January 14 articles mention Texas, those references do not alter the focal point of the alleged libel and harm. *See Fielding*, 415 F.3d at 427; *see also Johnson*, 21 F.4th at 318. The articles' focus remains on Plaintiff's alleged misconduct as a former Nigerian ambassador and diplomat, conduct occurring entirely in Nigeria that allegedly caused her termination there. ECF No. 38 at 5. According to *Fielding*, the location of a diplomat's termination is a critical indicator of where the reputational harm is felt. *Fielding*, 415 F.3d at 426–27. Because Defendants' reporting concerns Plaintiff's alleged misconduct in Nigeria, the focus remains on Nigerian activities of a Nigerian individual, and Texas appears only as collateral context because Plaintiff fled to Texas after Defendants' initial reporting.

10

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of personal jurisdiction is **GRANTED**. Accordingly, this case is **DISMISSED without prejudice**.

**SO ORDERED** on this **4th day of June 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE